### GLENN et al. v. McCARTY et al.
### No. 4692.

Court of Civil Appeals of Texas. Amarillo.
Jan. 18, 1937.

Rehearing Denied April 5, 1937.

Jno. B. Daniel, of Temple, and Bean & Bean, of Lubbock, for appellants.

Wm. H. Evans and Vickers & Campbell, all of Lubbock, for appellees.

MARTIN, Justice.

Judgment herein was for appellees, canceling an entire indebtedness, and a lien on lot No. 6, block No. 12, town of Muleshoe, Bailey county, because of the presence of usury in a loan contract.

In a somewhat different manner and form, appellants again urge practically the same issues of law that were decided against them on a former appeal of this case reported in 75 S.W.(2d) 162, where the facts are sufficiently stated. We deem it necessary to again briefly sketch the background of this controversy by a recitation of some of the controlling facts. McCarty, Sr., and McCarty, Jr., father and son, desired to purchase two lots, Nos. 6 and 7, in Muleshoe, and to erect thereon brick buildings, the first of which was to be owned and used by the son in the operation of a drug store. They needed about $8,000 of the total cost of $14,000 for the erection of the buildings. They applied to Temple Trust Company for a loan. It is inferable from the facts that the following transpired as a result of the negotiations with such company: McCarty, Sr., was required to take title to both lots and execute all loan papers. Whenever $2,500 was paid, his property was to be released and his son was to take over the payment of the balance of the debt and have a deed to his property. In pursuance thereto, in 1931, the Temple Trust Company prepared a deed from McCarty, Sr., to his son to lot No. 6, requiring the son to assume the balance of the debt. The property of McCarty, Sr., was released and the son executed a new trust deed and notes. The original trust deed signed by McCarty, Sr., required that his grantee assume the debt. It was, we think, a fair conclusion from the evidence that the various written instruments were but the consummation of an oral understanding had at the inception of the loan. The trial court found in part:

"That Temple Trust Company never in law or fact purchased the mechanic's

lien at a discount from the contractor McDaniel, but in fact advanced the sum of $7,920.00 to A. V. McCarty, Jr. for his use and benefit as a loan for the purpose of paying for the improvements to be erected on his said lot as aforesaid and that such money was so used by A. V. McCarty, Jr. in supplement with other funds he raised in paying for said improvements on his said lot of land; that the notes and deed of trust here involved were renewals and extension of that debt. That the entire transaction and the instruments executed in connection with it represented a single contract whereby said Temple Trust Company loaned the sum of $7,920.00 to A. V. McCarty, Jr. in fact; and that execution by McCarty, Sr. and wife of the $8,800.00 mechanic's and materialmen's lien which was transferred of record to said Temple Trust Company were merely steps taken at its instance in order to perfect their security on both lots of land for the loan it made in fact to A. V. McCarty, Jr. Further that said Temple Trust Company was not an innocent purchaser for value of the $8,800.00 mechanic's lien note; that all of the instruments constitute but a single transaction whereby Temple Trust Company made a loan to A. V. McCarty, Jr. to pay for improvements on said lot and it so intended for such money to be a loan for such purposes."

The loan was usurious for the reasons pointed out on the former appeal.

To illustrate what the trial court had before it as an issue: A has money to loan at a high rate of interest, and wants a chance at least to make more than 10 per cent. per annum. B needs a loan. A, to cover up usury, agrees to let B have the money, if title to the property be taken in C's name, who is to execute all papers, with the understanding that any grantee of his will assume this loan, and with the further agreement that when a certain amount is paid, B will take over the loan and property. In all these matters the papers are actually drawn and delivered by A, and B assumes the unpaid balance of the loan. Is not this B's loan in reality? And is he estopped by his assumption under such facts? Could it be the courts will draw the curtain on this transaction and refuse to look beyond the written record to the real facts? We think not. If not, we correctly decided this case originally. The facts

are not essentially different, and we deem it unnecessary to again detail them. We think there was a final written contract by McCarty, Jr., to pay usurious interest, and that no saving clause appears in the trust deed that is applicable to the contingencies shown in this record.

■ The final trust deed and notes were executed by McCarty, Jr., in 1931. A double recovery of interest paid after that date was allowed by the trial court as a penalty, which when added to former payments, completely extinguished the original principal of the debt. It is contended, and we think correctly so, that appellees failed to prove a payment of more than 10 per cent. per annum within the two years prior to bringing suit as alleged by them, and therefore the penalty allowed was not recoverable. The original notes dated in 1925 aggregated $8,800. The sum actually loaned was $7,920. In 1931, McCarty, Jr., executed two trust deeds in renewal and extension of this indebtedness. The first of these was to secure one note of $5,500, payable in 125 monthly installments of $68.75 each, with interest from maturity at 10 per cent. per annum. The second was given to secure one second lien note for $800, due December 1, 1931, with interest from date at 8 per cent. per annum. A mass of figures appears in the record. Many of these appear to have been payments of the installments of $68.75. These represent about 9.1 per cent. interest per annum on the $5,500 note. We fail to find in the record when appellees filed their suit. An amended petition was filed August 8, 1935. Payments began in 1931 and continued until 1934. The record is silent as to how they were paid or applied. Appellees state in their brief: "At Page 22 of Appellants' brief, it is admitted that the records showed $2,323.48 had been paid on the loan and the record in that connection showed that most all of it had been paid within the two years preceding the suit."

How much is "most all of it," and when was the suit filed? Appellees refer to the contents of a petition of foreclosure filed by appellants in Bell county in which it is stated that there was a balance of $4,801.50 due on this debt. This was apparently a calculation of the attorneys, and included principal, interest, and attorneys' fees. Besides, no filing date of such suit is shown, and from it we are not able to figure the amount paid as interest.

 To recover a penalty, the burden was upon appellees in this cause to show that within the two-year period preceding their suit they paid as interest on said contract a sum in excess of 10 per cent. per annum. Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.(2d) 939. This, in our opinion, they failed to do. Rather it seems, the meager record before us tends to show payment of said installments in most part. These are admittedly below 10 per cent. interest per annum.

The pleadings are in the alternative, and authorize an application of all usurious interest payments to the extinguishment of the principal of said original debt of $7,920. The total of all payments are insufficient of themselves, and without the penalty, to extinguish the entire debt as found by the trial court. A small amount remains as a valid obligation. It may be that appellees desire to make an attempt to prove their penalty case, and we therefore do not reform and affirm.

Judgment reversed and cause remanded.